ROCKARD J. DELGADILLO, City Attorney - SBN 125465x
MICHAEL L. CLAESSENS, Senior Assistant City Attorney
CORY BRENTE, Supervising Assistant City Attorney
COLLEEN R. SMITH, Deputy City Attorney - SBN 209719
6th Floor, City Hall East
200 North Main Street
Los Angeles, CA 90012
E-Mail: colleen.smith@lacity.org
Phone No.: (213) 978-7027, Fax No.: (213) 978-8785

Attorneys for Defendants CITY OF LOS ANGELES, SPIRO J. RODITIS and CHRISTOPHER P. GOMEZ

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD J. GLAIR,<br><br>           Plaintiff,<br><br>vs.<br><br>CITY OF LOS ANGELES, et al.,<br><br>           Defendants. | CASE NO.: CV06-02730 R (RNBx)<br><br>~~PROPOSED~~ STATEMENT OF UNCONTROVERTED MATERIAL FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT<br><br>[Filed concurrently with Notice of Motion and Motion; Memorandum of Points and Authorities; Declaration of Colleen R. Smith and Exhibits; Declaration of Officer T. Rodda and Exhibit; Proposed Judgment]<br><br>DATE: May 18, 2009<br>TIME: 10:00<br>CTRM: 8<br><br>Judge: Hon. Manuel L. Real<br>Magistrate: Hon. Robert N. Block |

Defendants CITY OF LOS ANGELES, SPIRO J. RODITIS and CHRISTOPHER P. GOMEZ hereby submit the following Proposed Statement of Uncontroverted Material Facts and Conclusions of Law in support of their Motion for Summary Judgment, or alternatively, Partial Summary Judgment.

///

1

# ~~PROPOSED~~ STATEMENT OF UNCONTROVERTED MATERIAL FACTS

| Uncontroverted Material Fact | Supporting Evidence |
|---|---|
| 1. Celia Mann was a Senior Recreation Director assigned to Queen Anne Park and she supervised other employees assigned to the park. | 1. Exhibit "B" attached to Smith decl.; Mann deposition, pp. 9 and 40, attached to Smith decl. as Exhibit "D"; Exhibit "E-5", attached to Smith decl. |
| 2. Plaintiff lived across the street from Queen Anne Park. | 2. Glair deposition, p. 88, attached to Smith decl. as Exhibit "F". |
| 3. Beginning in approximately September 2004, Plaintiff made numerous complaints about Celia Mann, telephoned her supervisors numerous times and sent numerous e-mails to her superiors detailing her every move and her work hours. | 3. Injunction Hearing Transcript, pp. 57:16-21 and 82:20-24, attached to Smith decl. as Exhibit "L"; Glair deposition, pp. 7-8, attached to Smith decl. as Exhibit "F"; Exhibits "G" and "I" attached to Glair deposition; Exhibit "E-51", attached to Smith decl.; |
| 4. On or about November 27, 2004, Plaintiff sent an email to the Parks and Recreation Department wherein he admitted that he was at the park constantly and that he had been monitoring Celia Mann's daily activity for months. | 4. Glair deposition, p. 93, attached to Smith decl. as Exhibit "F"; Exhibit "I" attached to Glair deposition. |
| 5. Plaintiff also admitted in his email that he had been looking in Celia Mann's car and he specifically described the contents of her car. | 5. Injunction Hearing Transcript, p. 57:16-21, attached to Smith decl. as Exhibit "L"; Glair deposition, p. 93, attached to Smith decl. as Exhibit "F". Exhibit "I" attached to Glair deposition. |

| | |
|---|---|
| 6. On or about December 8, 2004, Jon Mukri, the General Manager of the Department of Parks and Recreation, responded to Plaintiff's complaint about Celia Mann's work hours and informed him that his complaint would be investigated. | 6. Mukri deposition, pp. 11, 20, 21, attached to Smith decl. as Exhibit "G". |
| 7. After Jon Mukri told Plaintiff that his complaint would be investigated, Plaintiff continued to monitor Celia Mann's every move, ask her whereabouts and email Jon Mukri about her daily activities. | 7. Mann deposition, p. 49, attached to Smith decl. as Exhibit "D"; Exhibit "H" attached to Glair deposition; Exhibit "M" attached to Smith decl. |
| 8. For approximately six months, Celia Mann saw Plaintiff at the park approximately three to four times per day. | 8. Exhibit "A" attached to Rodda decl.; Mann deposition, p. 51, attached to Smith decl. as Exhibit "D"; Exhibit "E-6", attached to Smith decl. |
| 9. Plaintiff always spoke loudly and irately to and about Celia Mann. | 9. Mann deposition, pp. 29 and 79, attached to Smith decl. as Exhibit "D". |
| 10. On one occasion, Celia Mann approached Plaintiff in the park to talk to him and he was belligerent, appeared to be intoxicated, he cursed and spit at her and gyrated his arms in an angry fashion towards her. | 10. Mann deposition, p. 79, attached to Smith decl. as Exhibit "D". |
| 11. Plaintiff also urinated in the picnic area of the park. | 11. Glair deposition, p. 88, attached to Smith decl. as Exhibit "F"; Exhibits "B-150" and Exhibit "E-9" attached to Smith decl. |

| | |
|---|---|
| 12. For approximately one month, Celia Mann and the employees working at Queen Anne Park kept a log noting Plaintiff's presence at the park. | 12. Exhibit "B-150" attached to Smith decl.; Mann deposition, p. 40, attached to Smith decl. as Exhibit "D". |
| 13. Celia Mann observed Plaintiff loitering near her car on several occasions. | 13. Exhibit "E-6" attached to Smith decl. |
| 14. Celia Mann learned in January 2005, that Plaintiff had been looking in her car and knew the contents of her car. | 14. Exhibit "E-6", attached to Smith decl.; Injunction Hearing Transcript, pp. 38-40; attached to Smith decl. as Exhibit "L"; |
| 15. Celia Mann was so frightened by Plaintiff that she started using alternate means to go to and from the park so that Plaintiff would not know if she was there. | 15. Injunction Hearing Transcript, pp. 8, 17, 30, 38-40; attached to Smith decl. as Exhibit "L"; Exhibit "E-6" attached to Smith decl. |
| 16. Plaintiff's behavior and constant observation of Celia Mann escalated over a three to four month period. | 16. Mann deposition, pp. 44-45, attached to Smith decl. as Exhibit "D". |
| 17. From January 3rd to 7th, Plaintiff knew exactly what Celia Mann did all day long, knew how long she had been in a staff meeting and knew what time she came and left the park. | 17. Mann deposition, p. 49; Exhibit "H" attached to Glair deposition. |
| 18. Plaintiff also sent an email to Jon Mukri on January 22, 2005, describing when Celia Mann arrived and left the park every day from January 17th to 21st. | 18. Exhibit "M" attached to Smith decl. |

4

| | |
|---|---|
| 19. Jon Mukri, the General Manager, perceived Plaintiff's repeated statements and behavior as threats against Celia Mann and her safety. | 19. Mukri deposition, pp. 32-33, 36, attached to Smith decl. as Exhibit "G"; Exhibits "M" and "N" attached to Smith decl. |
| 20. Plaintiff's constant monitoring of and complaints about Celia Mann were far beyond any ever seen by Jon Mukri and the Department of Parks and Recreation. | 20. Mukri deposition, p. 48, attached to Smith decl. as Exhibit "G" |
| 21. On January 24, 2005, Celia Mann called the police. When the officers arrived, Plaintiff was not present in the park. | 21. Officer T. Rodda decl.; Exhibit "A" attached to Rodda decl. |
| 22. Celia Mann described Plaintiff's behavior to the police officers and she told them that Plaintiff's behavior frightened her and she felt threatened by him. | 22. Officer T. Rodda decl.; Exhibit "A" attached to Rodda decl.; Exhibits "B" and "E-3" attached to Smith decl. Injunction Hearing Transcript, pp. 39-40 and 47:14-15 attached to Smith decl. as Exhibit "L". |
| 23. Celia Mann told the police officers that Plaintiff was constantly monitoring her and her work habits, was threatening to have her fired, was looking in her car, knew the contents of her car and was constantly asking about her. | 23. Officer T. Rodda decl.; Exhibit "A" attached to Rodda decl. |
| 24. Celia Mann also told the police that Plaintiff had been very aggressive towards her and had urinated in the park. | 24. Officer T. Rodda decl.; Exhibit "A" attached to Rodda decl. |

| | |
|---|---|
| 25. A Preliminary Investigation of Stalking report was made on January 24, 2005. | 25. Officer T. Rodda decl.; Exhibit "A" attached to Rodda decl.; Gomez deposition, pp. 15-16, attached to Smith decl. as Exhibit "C". |
| 26. Celia Mann was given a copy of the facesheet, but not the entire crime report. | 26. Gomez deposition, p. 59, attached to Smith decl. as Exhibit "C"; Officer T. Rodda decl. |
| 27. On January 24, 2005, members of the community told Celia Mann that Plaintiff had exposed himself in the park and had committed lewd acts with his dog. | 27. Mann deposition, pp. 23-24, attached to Smith decl. as Exhibit "D". |
| 28. On January 25, 2005, Celia Mann called the police again about Plaintiff and approximately four officers - Roditis, Gomez, Hernandez and Fernandez - came to the park. | 28. Exhibit "B" attached to Smith decl.; Mann deposition, pp. 88-89, attached to Smith decl. as Exhibit "D". |
| 29. Defendants Roditis and Gomez responded to a radio call indicating a "415" man at Queen Anne Park with a felony stalking report on file. | 29. Exhibit "B" attached to Smith decl.; Gomez deposition, p. 24, attached to Smith decl. as Exhibit "C". |
| 30. Celia Mann told the police officers about Plaintiff exposing himself and committing lewd acts with his dog. | 30. Exhibit "B" attached to Smith decl.; Mann deposition, p. 36, attached to Smith decl. as Exhibit "D". |
| 31. Defendants Roditis and Gomez also were told that Plaintiff had looked inside Celia Mann's car and documented what he saw inside of her car. | 31. Exhibit "B" attached to Smith decl.; Gomez deposition, p. 35, attached to Smith decl. as Exhibit "C"; |

| | |
|---|---|
| 32. Defendants Roditis and Gomez were provided with a copy of a log noting Plaintiff's frequency at Queen Anne Park. | 32. Exhibit "B" attached to Smith decl.; Gomez deposition, p. 46, attached to Smith decl. as Exhibit "C"; Mann deposition, p. 40, attached to Smith decl. as Exhibit "D". |
| 33. Celia Mann identified Richard Glair to the police officers as the person who had been threatening and scaring her. | 33. Exhibit "B" attached to Smith decl.; Mann deposition, p. 33, attached to Smith decl. as Exhibit "D". |
| 34. On their way to the police station, Plaintiff made spontaneous statements about Celia Mann's car and her work hours. | 34. Exhibit "B" attached to Smith decl.; Gomez deposition, p. 50, attached to Smith decl. as Exhibit "C". |
| 35. Defendants Roditis and Gomez did not know the details contained in the felony stalking report when they arrested Plaintiff, but they knew that the report was on file and had gone through the Department's usual approval process. | 35. Gomez deposition, pp. 66-67, attached to Smith decl. as Exhibit "C". |
| 36. Defendants Roditis and Gomez's arrest of Plaintiff was based on totality of the information presented to them. | 36. Exhibit "B" attached to Smith decl.; Gomez deposition, pp. 78 and 80, attached to Smith decl. as Exhibit "C". |
| 37. Plaintiff was arrested for his behavior, not for exercising his right to free speech. | 37. UMF nos. 2-36; Exhibit "B" attached to Smith decl.; Gomez deposition, pp. 78 and 80, attached to Smith decl. as Exhibit "C". |
| 38. Detective Cho was presented the information known to the officers and gave booking approval of Plaintiff on the charge of stalking (Penal Code 646.9). | 38. Exhibit "B" attached to Smith decl.; Cho deposition, pp. 5-6, attached to Smith decl. as Exhibit "K" |

| | |
|---|---|
| 39. Detective Cho was told that Plaintiff was constantly looking for Celia Mann, Plaintiff yelled and cursed at her, Plaintiff looked inside her car and documented what was inside, Plaintiff exposed himself in public and Plaintiff specifically asked for Celia Mann when there were other park employees capable of helping him. | 39. Cho deposition, pp. 9, 10 and 25, attached to Smith decl. as Exhibit "K". |
| 40. Based on the totality of the information presented to him, Detective Cho believed that Plaintiff had an intent to harm Celia Mann. | 40. Cho deposition, p. 77, attached to Smith decl. as Exhibit "K". |
| 41. Based on all the information presented to him, Detective Cho believed that Plaintiff's behavior towards Celia Mann gave probable cause to arrest Plaintiff for stalking. | 41. Cho deposition, pp. 9, 22, 24, 25, 26, 39, 78, attached to Smith decl. as Exhibit "K". |
| 42. Celia Mann was so concerned about her safety that she also obtained a restraining order against Plaintiff. | 42. Exhibit "E". |

## CONCLUSIONS OF LAW

1. Plaintiff cannot prove that Defendants Roditis and Gomez violated his First Amendment Rights by arresting him for stalking as he was arrested for his behavior not for exercising his right to free speech.

2. Plaintiff cannot prove that Defendants Roditis and Gomez violated his Fourth Amendment as Defendants Roditis and Gomez had probable cause to arrest him

on January 25, 2005. In the alternative, Defendants Roditis and Gomez are entitled to qualified immunity as a reasonable police officer in the same situation would have believed that he acted lawfully.

    3.    Plaintiff cannot prove that Defendant City of Los Angeles is liable for false arrest because Defendants Roditis and Gomez had probable cause to arrest him on January 25, 2005. In the alternative, Defendants Roditis and Gomez had reasonable cause to believe that Plaintiff's arrest was lawful.

    4.    Plaintiff cannot prove that Defendant City of Los Angeles is liable for intentional infliction of emotional distress because Defendants Roditis and Gomez had probable cause to arrest him on January 25, 2005 and did not act outrageously towards Plaintiff. Defendants also have immunity under *California Government Code* sections 821.6 and 815.2(b).

    5.    Plaintiff cannot prove that Defendant City of Los Angeles is liable under California Civil Code section 52.1 as Defendants Roditis and Gomez did not threaten, coerce or intimidate Plaintiff.

DATED: March 20, 2009    ROCKARD J. DELGADILLO, City Attorney
MICHAEL L. CLAESSENS, Sr. Asst. City Attorney
CORY M. BRENTE, Assistant City Attorney
COLLEEN R. SMITH, Deputy City Attorney

By _____
COLLEEN R. SMITH, Deputy City Attorney
*Attorneys for Defendants* CITY OF LOS ANGELES, SPIRO J. RODITIS, and CHRISTOPHER P. GOMEZ

*[Handwritten:]* The court has read and adopts the reconstructed facts as supported by evidence

*[Signature]* May 18 2009
U.S.D.J.

9